**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| SHARON E. TAYLOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:10-cv-01486-TWP-DML |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF THE SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY ON JUDICIAL REVIEW**

Plaintiff, Sharon E. Taylor ("Ms. Taylor") filed this action seeking judicial review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. 42 U.S.C. 416(i). For the reasons set forth below, the Commissioner's decision is **AFFIRMED.**

**I.   BACKGROUND**

Ms. Taylor was born on April 7, 1956, making her 50 years old at the alleged onset date of disability. R. at 24. She has an Associate's Degree. R. at 39. She is divorced and resides with her daughter and family. R. at 36-37.

**A.   Procedural History**

Ms. Taylor first filed her DIB application on November 20, 2007. R. at 17. In her application, Ms. Taylor alleged disability due to left hip, knee, back and side problems. R. at 17, 103-07, 120. She attributes the problems to a handcart accident that occurred in 2006 and an automobile accident that occurred in 2009. R. at 40-41, 46. Her applications were denied initially and upon reconsideration. R. at 37. On November 3, 2009, Ms. Taylor appeared with

counsel and testified at a hearing before Administrative Law Judge Ronald Dickinson ("the ALJ"). R. at 34. On February 3, 2010, the ALJ issued his decision finding that Ms. Taylor was not disabled because she was able to perform jobs that existed in significant numbers in the national economy. The Court reviews the ALJ's decision.

**B.      Medical History**

In March 2007, Ms. Taylor went to the emergency room after experiencing persistent pain on the left side of her body. R. at 272. Ms. Taylor stated the pain was caused by a flatbed cart that struck her on the left side of her body while she was shoe shopping at a Meijer store. R. at 272. Upon examination, the examining physician noted that Ms. Taylor had some minor tenderness in her left arm and thigh. R. at 273. However, she exhibited a full range of motion in her extremities, was able to ambulate without difficulty and had no bony palpable tenderness. R. at 273. She was discharged in stable condition. R. at 273.

Later that month, Ms. Taylor returned to the emergency room with complaints of back and knee pain. R. at 266. The examining physician noted that Ms. Taylor exhibited pain in her back and knee, but also noted that she had no bruising, swelling or deformity. R. at 267. The examining physician also ordered x-rays of Ms. Taylor's lumbar spine and left knee, both returned negative. R. at 267. She was diagnosed with a soft tissue injury and prescribed Orudis. R. at 267.

Ms. Taylor followed up with her family physician, Dr. Arthur Lorber, M.D. ("Dr. Lorber"), four times in between April and June 2007. In April 2007, during the first examination, Dr. Lorber noted that Ms. Taylor's hip was out of its socket, and she was experiencing neck and knee pain. R. at 297. During a second examination two weeks later, Dr. Lorber observed that Ms. Taylor's knee was still in pain, but was improving. R. at 296. Overall,

he was very pleased with her progress.   R. at 296.  In May 2007, Ms. Taylor visited Dr. Lorber again.  During this examination, Ms. Taylor claimed the pain was worse than it was during her previous visit.  R. at 295.  She had been attending physical therapy, but was discharged after not attending for the recommended frequency and duration.  R. at 324.  In June 2007, Dr. Lorber noted persistent pain, but continued improvement.  R. at 294.  However, the pain intensified when Ms. Taylor sat for long periods of time.  R. at 294.  That month, Ms. Taylor received the results from an MRI done on her knee.  R. at 206.  It showed minor cartilage loss, but no facture or tear of the menisci.  R. at 206.

Dr. Joseph Randolph, M.D. ("Dr. Randolph") examined Ms. Taylor four times between July and November 2007.  Ms. Taylor complained of knee, buttocks, and thigh pain.  R. at 286. During her initial examination in July 2007, Dr. Randolph noted that, outside of some cartilage thinning, Ms. Taylor's knee was normal.   R. at 286.   Dr. Randolph diagnosed her with osteoarthritis and prescribed Relafen.  R. at 286.  During Ms. Taylor's next examination, Dr. Randolph noted great improvement in Ms. Taylor's knee, but also noted that she was still mildly symptomatic.  R. at 285.  He also noted great improvement in the third examination, though Ms. Taylor expressed mild discomfort.  R. at 284.  At her fourth examination, Dr. Randolph noted that Ms. Taylor continued to express feelings of discomfort.  R. at 282.

In January 2008, Dr. Michael Nenaber ("Dr. Nenaber"), a state agency reviewing physician, reviewed Ms. Taylor's medical record.  R. at 313.  Based on the record, Dr. Nenaber opined that Ms. Taylor could occasionally and frequently lift up to ten pounds, stand and walk for up to two hours per day, sit for a period of six hours per day and push/pull with both her arms and legs.  R. at 307.  Further, Dr. Nenaber opined that Ms. Taylor could never climb ladders, but occasionally climb stairs, stoop, kneel, crouch, balance, and crawl.  R. at 308.  Finally, Dr.

Nenaber opined that Ms. Taylor had no manipulative, communicative, visual or environmental limitations.  R. at 309-10.  Dr. J. Sands, another state reviewing physician, later affirmed Dr. Nenaber's findings.  R. at 351.

In March 2008, Ms. Taylor had more x-rays taken of her hip and left knee.  The x-ray of her hip showed mild degenerative changes in her hips, but no fractures, joint effusion, dislocations, or remarkable soft tissue damage.  R. at 350.  The x-ray of her left knee showed no fractures, dislocations, joint effusion, or remarkable soft tissue damage.  R. at 349.  It also showed that Ms. Taylor's knee had well maintained joint spaces.  R. at 349.

In January 2009, Ms. Taylor was diagnosed with severe back strain with spasms, a contusion of the left hand, and a left foot sprain as a result of an automobile accident.  R. at 440.  Ms. Taylor reported that she had been in good health prior to the accident.  R. at 440.

Later that month, Dr. Lorber examined Ms. Taylor and completed an assessment of her ability to work.  R. at 421.  In the assessment, Dr. Lorber opined that Ms. Taylor could frequently lift or carry ten pounds or less and occasionally lift or carry up to twenty pounds.  R. at 421.  Additionally, Dr. Lorber opined that Ms. Taylor could frequently push/pull ten pounds or less and occasionally push/pull up to twenty pounds.  Finally, Dr. Lorber opined that Ms. Taylor could frequently reach outward, sit and hand objects; occasionally bend, twist/turn, reach above her shoulder, stand and walk; but never squat, kneel or climb.  R. at 421.  He released her to return to full duty at work in February 2009.  R. at 426, 442.

Unhappy with Dr. Lorber's conclusion, Ms. Taylor went to Dr. Paul Ho ("Dr. Ho") for an examination in February 2009.  R. at 426.  Dr. Ho examined Ms. Taylor and took an MRI of her lumbar spine.  During the examination, Dr. Ho noted that Ms. Taylor had to walk on the ball of her left foot because of pain.  He also noted that she had some fingertip pain, moderately

restricted lumbar mobility, and mildly limited neck range of motion.  R. at 426.  However, Dr. Ho found that Ms. Taylor was still able to make a fist in her injured hand, had painless hip motion, no sciatic tensions signs and no reflex motor or sensory deficiency.  R. at 426.  Finally, he noted that she had no fractures in her injured foot or hand.  R. at 426.

The MRI of Ms. Taylor's lumbar spine showed moderate degenerative disc disease at her L-4-5 vertebrae with a shallow disc protrusion.  R. at 424.  However, there was no spinal stenosis or nerve root impingement identified.  R. at 424.  It also showed mild facet joint degeneration at L5-S1 and generalized lumbar lordosis without spondylolisthesis.  R. at 424.  Finally, the MRI showed no fractures.  R. at 424.

With this information, Dr. Ho opined that Ms. Taylor was unable to return to her regular job as a truck driver, but could sit for two hours at a time with an hour resting in between.  R. at 427.

In March 2009, Ms. Taylor conducted a residual functional capacity ("RFC") assessment. Although the assessment concluded that Ms. Taylor could sit or stand for six to eight hours per day with no limitations, the test was deemed unreliable because Ms. Taylor did not exert the required effort during the test.  R. at 357.  The examining physician, Dr. David Steinberg ("Dr. Steinberg"), noted that Ms. Taylor exhibited several inconsistencies that led him to believe that her true safe maximum capacity was greater than the test demonstrated.  R. at 357.  Dr. Steinberg further noted that Ms. Taylor's pain reports did not correlate with her behavior and that her pain questionnaires showed strong tendencies toward inappropriate illness behavior.  R. at 357.

Later that month, Ms. Taylor saw Dr. Steinberg for a follow up.  Dr. Steinberg noted that during the musculoskeletal exam and the lumbar spine exam, Ms. Taylor seemed to be in some pain.  R. at 432.  Otherwise, he noted that she appeared to be healthy and in no acute stress.  R. at

432.  Dr. Steinberg found that she had full range of motion and normal strength in her upper and lower extremities and that she had full range of motion in her hips with no obvious swelling or tenderness.  R. at 432.  He released her at maximum medical improvement at that time.  R. at 431.

After Dr. Steinberg released Ms. Taylor to go back to work, she went to Dr. Naveed Sadiq ("Dr. Sadiq") for a second opinion.  R. at 456.  Dr. Sadiq noted that Ms. Taylor could not sit for more than thirty minutes at a time.  R. at 456.  However, he noted that Ms. Taylor's extremities were normal and she was in no acute distress.  R. at 456.

In June 2009, Dr. Karl Manders ("Dr. Manders") examined Ms. Taylor.  Upon physical examination, Dr. Manders determined that Ms. Taylor had no gross, motor, sensory or neurological problems.  R. at 442.  However, she did have limited range of motion in her lower back and problems bending over.  R. at 442.  This led Dr. Manders to conclude that she would have trouble sitting or standing for long periods of time and that she would not be able to return to her previous profession.  R. at 442-43.

In September 2009, Dr. Sadiq evaluated Ms. Taylor's RFC.  R. at 353.  He opined that Ms. Taylor could lift twenty pounds, stand for fifteen minutes at a time and sit for fifteen minutes at a time.  R. at 353.  Dr. Sadiq further opined that Ms. Taylor could occasionally bend, scoop, balance, and operate a motor vehicle.  Additionally, Ms. Taylor could occasionally tolerate cold, dust, smoke, and fumes.  R. at 353.  Ms. Taylor could frequently manipulate her hands, tolerate heat and sounds.  R. at 353.  However, she could not lift her arms over her shoulder and occasionally needed to elevate her leg.  R. at 353.  Finally, Dr. Sadiq opined that Ms. Taylor could work zero hours per day.  R. at 353.

6

C.      **The Administrative Hearing**

1.      **Ms. Taylor's Testimony**

At the hearing on November 3, 2009, Ms. Taylor testified that, before her accident, she had worked as a truck driver since 2003.  R. at 40.  She also worked as a social service director and an office clerk.  R. at 42-3.  However, she has no current source of income.  R. at 40.

Ms. Taylor testified that she could no longer work because of her injuries.  She testified that she was experiencing pain in her foot, neck, back, shoulder and hands.  She stated that she could no longer work as truck driver because of extreme back and foot pain.  R. at 43.  Further, she testified that she could not work an office job because she could not type with her left finger, nor could she sit for long periods of time.  R. at 43.  When asked how long she could stand without resting, Ms. Taylor indicated that she could only stand for five to ten minutes before having to lie down for two hours on a heat pad, due to the pain. R. at 44, 48.  When asked how long she could sit at a time, she testified that she could sit for ten to fifteen minutes before having to stand and stretch.  R. at 44.  Finally, she testified that the medication that she is taking makes her drowsy and upsets her stomach.  R. at 44, 46-7.

2.      **Vocational Expert's Testimony**

The vocational expert, Ron Malik ("the VE"), testified after Ms. Taylor during the hearing.  R. at 48.  First, the VE testified that he had examined Ms. Taylor's file from a vocational perspective.  R. at 48.  The VE then identified that Ms. Taylor had performed as an office clerk, DOT 219.362-010, a semi skilled position with light physical demand, a semi-driver, DOT 904.383-010, a semi skilled position with medium physical demand and a service director, 195.167-026, a skilled position with light physical demand.  R. at 48.

The ALJ then posed a hypothetical to the VE to determine whether Ms. Taylor was able to perform jobs that were available in the state economy. The ALJ asked whether a woman of similar age and skill level would be able to find jobs in the national economy that were (1) unskilled, (2) required only light exertion, (3) required no climbing, crouching, squatting or kneeling, (4) required no pushing or pulling with the legs or feet, (5) required no reaching above shoulder level, and (6) allowed the person to alternate between standing and sitting. R. at 49-50.

The VE answered the hypothetical affirmatively. R. at 50. He explained that there were substantial jobs available in the local economy that Ms. Taylor could perform. R. at 50. These jobs included a cashier, DOT 211.462-010, a router, DOT 222.587-038, and a marker, DOT 920.687-126. R. at 50.

Next, the ALJ reemphasized that these jobs required the ability to alternate between sitting and standing. R. at 51. The VE testified that he was familiar enough with the jobs to know that they offered this option. R. at 51. The ALJ also asked the VE how many days of work someone with one of these job titles could miss per month. The VE testified that if the employee missed two or more days per month he or she would likely lose their job. R. at 51. Finally, the ALJ asked the VE if these jobs allow breaks and if the employee could lie down. R. at 51. The VE testified that the jobs allowed breaks, but they would be limited. R. at 51. Additionally, the VE testified that the employee could not lie down in performing these jobs. R. at 52.

## II.   <u>STANDARD OF REVIEW</u>

To be eligible for DIB, a claimant must have a disability under 42 U.S.C. § 423. "Disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment ...." 42 U.S.C. § 423(d)(1)(A). The ALJ

applies a five step process in determining whether a claimant is disabled.  This process is evaluated as follows:

1. The Court considers the claimant's work activity, if any. If he/she is doing substantial gainful activity, the Court will find that he/she is not disabled.

2. The Court considers the medical severity of the claimant's impairment(s). If he/she does not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, the Court will find that the claimant is not disabled.

3. The Court also considers the medical severity of the claimant's impairment(s). If he/she does have an impairment(s) that meets or equals one of the Court's listings in appendix 1 of this subpart and meets the duration requirement, the Court will find that the claimant is disabled.

4. The Court considers an assessment of the claimant's residual functional capacity and his/her past relevant work. If he/she can still do her past relevant work, the Court will find that the claimant is not disabled.

5. The Court considers an assessment of the claimant's residual functional capacity and his/her age, education, and work experience to see if he/she can make an adjustment to other work. If the claimant can make an adjustment to other work, the court will find that he/she is not disabled. If the claimant cannot make an adjustment to other work, the Court will find that he/she is disabled.

20 C.F.R. § 404.1520(a)(4).  Although the burden is on the claimant for the first four steps, it shifts to the Commissioner for the fifth.  *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

The court will sustain the ALJ's findings if they are supported by substantial evidence. 42 U.S.C. § 405(g); *Nelson v. Apfel,* 131 F.3d 1228, 1234 (7th Cir. 1997); *Knight*, 55 F.3d at 313.  In reviewing the ALJ's findings, the court may not "decide facts anew, reweigh the evidence, or substitute our judgment for that of the ALJ." *Nelson*, 131 F.3d at 1234.  The ALJ's decision will be reversed only if his findings are not supported by substantial evidence or if the ALJ "applied an erroneous legal standard." *Id.*  Although a mere scintilla of evidence is insufficient to the ALJ's findings, only "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion" is required. *Scivally v. Sullivan*, 966 F.2d 1070, 1075 (7th Cir. 1992) (quoting *Pitts v. Sullivan,* 923 F.2d 561, 654 (7th Cir. 1991)). Where reasonable minds may differ as to whether the claimant is disabled, the court will defer to the ALJ. *Binion ex rel. Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

Although the ALJ need not evaluate in writing every piece of testimony and evidence submitted, he must articulate some legitimate reason for his decision based on relevant evidence. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000); *Herron v. Shalala*, 19 F.3d 329, (7th Cir. 1994). Further, "[a]n ALJ may not select and discuss only that evidence that favors his ultimate conclusion, but must articulate, at some minimum level, his analysis of the evidence to allow the court to trace the path of his reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). Finally, an ALJ must "build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. However, the Court will "give the [ALJ's] opinion a commonsensical reading rather than nitpicking at it." *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000).

### III.    DISCUSSION

**A.    The ALJ's Findings**

In his opinion, the ALJ noted that Ms. Taylor testified that she could stand for no more than five to ten minutes and sit for no more than ten to fifteen minutes due to her pain. R. at 21. Although the ALJ found that Ms. Taylor's pain could reasonably stem from her injuries, her statements concerning the persistence, intensity and limiting effects of her symptoms were inconsistent with her medical examinations and thus not credible. R. at 22. The ALJ noted that Ms. Taylor had been released for work by Dr. Lorber and released at maximum medical improvement by Dr. Steinberg, both examining physicians. R. at 22. The ALJ noted that Ms. Taylor received no treatment for her injuries other than conservative routine maintenance. R. at

10

22.   The ALJ also noted that although Ms. Taylor complains of debilitating back pain, her medical records show no serious back problems.  R. at 22.  The ALJ also found that Ms. Taylor's obesity did not prevent her from engaging in work activity, nor did her medications.  R. at 22. The ALJ evaluated Dr. Ho's opinion that Ms. Taylor could not return to work, but concluded that the statement was an administrative finding, not a medical opinion.  R. at 23.

Additionally, the ALJ assigned significant weight to some opinions of examining physicians Lorber, Manders and Sadiq.  R. at 23.  The ALJ found that these doctors' opinions were well supported by medical evidence and not inconsistent with any substantial evidence in the record.  R. at 23.  The ALJ also noted that these doctors, as examining physicians, had seen Ms. Taylor on a regular basis and were therefore in the best position to provide an analysis of Ms. Taylor's limitations.  R. at 23.

By contrast, the ALJ discounted the medical opinions of non-examining physicians Nenaber and Sands.  R. at 23-4.  In support of this, the ALJ reasoned that the non-examining physicians' opinions were inconsistent with Ms. Taylor's medical information, that they were not able to review Ms. Taylor's medical information after their opinions were issued and that they were not able to evaluate or observe Ms. Taylor's demeanor.  R. at 24.

In finding that Ms. Taylor was able to work, the ALJ evaluated Ms. Taylor's evidence based on the five step process.  R. at 19.  He found that Ms. Taylor was not currently engaging in any substantial gainful activity.  R. at 19.  The ALJ also found that Ms. Taylor suffered from the following impairments:  pain in the left side, including the knee, thigh, lower back and neck; osteoarthritis at multiple sites including the hips; obesity; chronic pain syndrome; left lower extremity pain; moderate degenerative disc disease; and left foot pain.  R. at 19.  Although the ALJ found these impairments severe when examined in combination, they did not meet or

medically equal one of the listed impairments at 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.120(d), 1525, 1526).  R. at 20.  He reasoned that there were no reports of functional limitations, nor any physician reports that suggested Ms. Taylor's impairments met or medically equaled the listed impairments.  R. at 21.

The ALJ then assessed Ms. Taylor's RFC.  R. at 21.  In doing so, the ALJ determined that Ms. Taylor can perform light work as defined at 20 C.F.R. 404.1567(b).  R. at 21.  The ALJ determined that Ms. Taylor is limited to unskilled work with a sit/stand option; that she can never climb, crouch, squat, crawl or kneel; that she cannot use her lower extremities for pushing or pulling, nor use her upper extremities for work above the shoulder level.  R. at 21.

With this evaluation in mind, the ALJ concluded that Ms. Taylor could not perform her previous work.  R. at 24.  However, the ALJ determined that Ms. Taylor could perform jobs in the national economy.  R. at 24.  The ALJ found that although Ms. Taylor was able to perform some light work, she could not perform all or substantially all light work due to her limitations.  R. at 25.  Therefore, the ALJ relied on the VE's testimony that Ms. Taylor was able to perform work as a cashier, sorter or router in that national economy.  R. at 25.  He also noted that the VE's testimony was consistent with the information in the Dictionary of Occupational Titles.  Accordingly, the ALJ held that Taylor was not disabled.

**B.    Analysis**

Ms. Taylor challenges the ALJ's decision.  Specifically, Ms. Taylor challenges the ALJ's decision for the following four reasons:  (1) the ALJ's hypothetical posed to the VE was not sufficiently specific for the VE to properly answer; (2) the ALJ did not properly evaluate Ms. Taylor's RFC; (3) the ALJ did not properly evaluate the medical evidence in the record; and (4)

the ALJ did not properly evaluate Ms. Taylor's credibility.  All four arguments are addressed in turn.

### 1.    The ALJ's Hypothetical

Ms. Taylor contends that the hypothetical the ALJ posed to the VE was insufficient and incomplete.  First, Ms. Taylor claims that the ALJ's hypothetical was incomplete because he did not specifically mention how often an individual would be able to alternate between sitting and standing.   Additionally, Ms. Taylor contends that the ALJ's hypothetical was insufficient because it did not include all of Dr. Lorber's and Dr. Sadiq's opinions regarding Ms. Taylor's limitations.

An ALJ's hypothetical to a VE "ordinarily must include all limitations supported by medical evidence in the record."   *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002). However, the omission of some medical evidence may be cured if there is evidence "showing that prior to testifying the vocational expert reviewed the claimant's record containing the omitted information."  *Ragsdale v. Shalala*, 53 F.3d 816, 820 (7th Cir. 1995); *see also Manley v. Barnhart*, 154 Fed. Appx. 532, 537 (7th Cir. 2005); *Jones v. Shalala*, 10 F.3d 522, 525 (7th Cir. 1993) (holding that a hypothetical question was sufficient because the VE had reviewed the claimant's file prior to testifying); *Ehrhart v. Sec'y of Health and Human Servs.*, 969 F.2d 534, 540 (7th Cir. 1992) ("[E]ven if the hypothetical question omitted any medical evidence that accurately reflected [claimant's] impairments, the vocational expert indicated that he had reviewed the documentary evidence prior to the hearing.").  The only limitation to this concerns "multiple fact-sensitive hypotheticals that rule out key disability factors."   *Manley,* 154 Fed. Appx. at 537 (citing *Young v. Barnhart,* 362 F.3d 995 (7th Cir. 2004)).

###### a.      Sitting and Standing

Ms. Taylor contends that the hypothetical question the ALJ posed to the VE was incomplete and unreviewable because it did not specify how long the hypothetical individual could sit and stand without having to change positions, nor how often he or she needed to change positions in order to perform the job.  Because of this, Ms. Taylor argues that the VE could not properly evaluate whether there were jobs available in the national economy.

This argument fails for a number of reasons.  First, during the administrative hearing, the ALJ asked the VE if the hypothetical person could "alternate between sitting and standing" and still do the job.  R. at 50.  This question posed to the VE, whom the ALJ relied on to make his decision, implied that the person could sit or stand at will.  *See Ketelboeter v. Astrue*, 550 F.3d 620, 626 (7th Cir. 2008) (holding that "as needed" implies at will); *cf. Manley*, 154 Fed. Appx. at 537 (illustrating the subtlety in the difference between "alternate at will" and "alternate throughout the day").

Second, even if the ALJ's hypothetical is unclear, "any ambiguity is resolved by the VE's assertion that he had reviewed the entire record and listened to [Taylor's] testimony." *Id.*  At the hearing, the ALJ asked the VE the following:

> ALJ:  And have you had the chance to review this file from a vocational prospective?
>
> VE:  Yes, I have.
>
> ALJ:  And you've heard the testimony of Ms. Taylor.  Is there any additional information you'd like to obtain from her?
>
> VE:  No, Your Honor.

R. at 48.  This testimony showed that the VE was familiar with Ms. Taylor's case file from a vocational perspective and cures any ambiguity concerning the sit/stand option.

Lastly, the ALJ's hypothetical does not fall under any limitation.  In *Manley*, the claimant also challenged the ALJ's hypothetical as incomplete.  *Manley,* Fed.  Appx. at 537.  In the hypothetical, the ALJ stated that the individual could alternate between sitting and standing "throughout an eight hour day," after stating that he "could only sit up to one hour at a time or stand up to one hour at a time." *Id.*  The Seventh Circuit held that the hypothetical was sufficient because the VE had testified that he reviewed the claimant's file and that the ALJ did not ask several hypotheticals that would rule out key disability factors relating to sitting and standing at will. *Id.*

In this case, Ms. Taylor claims that the ALJ's hypothetical was incomplete because he did not specify the terms of the individual's sit/stand option.  However, like *Manley,* the VE testified that he had read Ms. Taylor's case file from a vocational prospective.  More importantly, the ALJ did not ask a series of hypothetical questions that ruled out key disability factors based on an individual's ability to alternate between sitting and standing.  Thus, the VE's interpretation of the ALJ's hypothetical was not limited; therefore, the VE's familiarity with the record would adequately allow him to evaluate whether there were jobs available in the national economy for Ms. Taylor.  *See id.* ("Thus nothing would keep the VE in interpreting the ALJ's hypothetical from considering Manley's earlier statements that he could only stand or sit for very limited stretches.").  Therefore, the Court finds that the ALJ's hypothetical is sufficient.

### b.    Other Medical Evidence

Next, Ms. Taylor contends that the ALJ improperly omitted medical evidence from Dr. Sadiq's and Dr. Lorber's opinions when posing his hypothetical to the VE.  In his medical opinions, Dr. Lorber opined that Ms. Taylor could occasionally twist, occasionally turn, frequently reach outward, and handle and finger.  Dr. Sadiq opined that Ms. Taylor had specific

environmental limitations, could frequently perform fine and gross manipulation, and needed to occasionally elevate her legs.  Because none of these opinions were addressed in the ALJ's hypothetical, Ms. Taylor argues that the case should be remanded.

The Court is not persuaded.  Even if the Court were to agree that the ALJ was required to accept this evidence, the VE testified that he had reviewed Ms. Taylor's file and thus was implicitly cognizant of it.  *Manley*, 154 Fed. Appx. at 537 ("[A] hypothetical is not defective simply for failing to include each and every detail of the applicant's disability, provided there are indications that the VE reviewed the entire record prior to the hearing."); *Jones*, 10 F.3d at 525. Therefore, Dr. Lorber's and Dr. Sadiq's opinions were considered even if the ALJ did not specifically refer to it in his hypothetical question.

## 2.    Residual Functional Assessment Determination

Ms. Taylor also challenges the ALJ's RFC assessment.  Ms. Taylor contends that the ALJ erred in evaluating her RFC in the following three ways: (1) the ALJ failed to determine how long Ms. Taylor could sit and stand; (2) the ALJ did not correctly consider the opinions of Dr. Lorber and Dr. Sadiq; and (3) the ALJ did not take into consideration Ms. Taylor's medication and its side effects.  The Court concludes that these three arguments are without merit.

### a.  Sitting and Standing

First, Ms. Taylor contends that the ALJ did not properly evaluate her RFC because he did not specifically state how long she could sit or stand without interruption in his opinion.  In making this argument, Ms. Taylor relies solely on Social Security Ruling ("SSR") 96-9p.  SSR 96-9p requires that the ALJ's RFC assessment "be specific as to the frequency as to the individual's need to alternate sitting and standing."  SSR 96-9p, 1996 SSR LEXIS 6 at *19, (July

2, 1996).  Because the ALJ did not specify Ms. Taylor's limitations numerically, Ms. Taylor claims that his decision is unreviewable.

In this case, even though the ALJ did not explicitly specify the frequency in which Ms. Taylor needed to alternate between sitting and standing in his RFC discussion, SSR 96-9p only applies to claimants with an RFC of less than the full range of sedentary work.  Taking all of Ms. Taylor's impairments into consideration, she is able to perform less than the full range of light work.  Therefore, SSR 96-9p does not apply to this case.

However, even if SSR 96-9p were to apply here, Ms. Taylor's argument would fail.  In his opinion, the ALJ determined that Ms. Taylor required a "sit-stand option."  The plain meaning of the word 'option' indicates free choice between one or more things.  The ALJ was indicating that Ms. Taylor needed employment in which she could freely choose between standing and sitting.   Accordingly, the Court concludes that the ALJ did not err in determining Ms. Taylor's RFC.

### b.  Medical Opinions

Ms. Taylor contends that the ALJ erred in evaluating Dr. Lorber's and Dr. Sadiq's medical opinions because he did not specifically reflect some of those opinions in Ms. Taylor's RFC analysis.  The Court disagrees.

Ms. Taylor's argument starts off on the wrong premise.  Ms. Taylor contends that the ALJ agreed with all of Dr. Lorber's and Dr. Sadiq's opinions on the record.  However, the ALJ only accorded substantial weight to the doctors' opinions in which he cited.  R. at 23.  The ALJ reasoned that those opinions were written by treating physicians, well supported by the medical evidence, and were consistent with other medical opinions.  R. at 23.

Furthermore, Ms. Taylor contends that the ALJ erroneously evaluated the cited opinions because, although he assigned them significant weight, the ALJ did not specifically consider that Ms. Taylor could occasionally walk, stand, twist/turn, and tolerate heat, cold, dust and fumes in the RFC. The ALJ's evaluations of all of the cited medical opinions in Ms. Taylor's RFC are supported by substantial evidence. The ALJ reasonably evaluated Ms. Taylor's limited ability to walk and stand when he tailored her RFC to require a sit/stand option in order to work. As mentioned above, this option allows Ms. Taylor to sit or stand or walk at will. Therefore, she may occasionally stand or sit at her pleasure.

While the ALJ could have included Ms. Taylor's twisting/turning and environmental limitations in the RFC, their absence was not fatal. "[N]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Hunter v. Barnhart*, 56 Fed. Appx. 262, 265 (7th Cir. 2003) (quoting *Fisher v. Bowen,* 869 F.2d 1055, 1057 (7th Cir. 1989)). In this case, the ALJ relied on the VE's testimony that Ms. Taylor was able to perform jobs in the national economy. The VE's testimony was based on a valid hypothetical posed by the ALJ. Additionally, the Seventh Circuit has upheld RFC analyses in which the claimant could only occasionally twist or turn. *See generally Ziegler v. Astrue*, 336 Fed. Appx. 563, 567 (7th Cir. 2009) (holding that the claimant could perform light work and occasionally twist); *Rudicel v. Astrue*, 282 Fed. Appx. 448, 451 (7th Cir. 2008) (holding that a claimant who could only occasionally twist could still perform light work). Therefore, the Court concludes that the ALJ's decision to not include certain limitations within Ms. Taylor's RFC does not warrant a remand.

Ms. Taylor also contends that the ALJ erred by not evaluating certain portions of Dr. Lorber's and Dr. Sadiq's opinions.[1]  Because the ALJ considered both Dr. Sadiq and Dr. Lorber as treating physicians, their opinions are entitled to controlling weight so long as they are "well-supported by medically acceptable clinical laboratory diagnostic techniques and [are] not inconsistent with other substantial evidence in [a claimant's] case record."   20 C.F.R. 404.1527(d)(2).

The ALJ found that the opinions noted above were not consistent with the record.  Even though the ALJ could have been clearer in his conclusion, the Court finds that his decision is supported by substantial evidence.  In his opinion, Dr. Lorber opined that Ms. Taylor could only frequently reach outward.  However, Dr. Steinberg, Dr. Sadiq and Ms. Taylor's emergency physician all noted that her extremities were normal.  Dr. Sadiq opined that Ms. Taylor could only frequently perform fine and gross manipulation with her hands.  However, Dr. Ho found that she could make a fist and exhibited no fractures in her hands, and Dr. Nenaber found that she had no manipulative limitations.  Dr. Sadiq opined that Ms. Taylor needed to occasionally elevate her legs.   However, Dr. Sadiq also opined that her extremities were normal.  Furthermore, Dr. Steinberg found that Ms. Taylor had no obvious swelling in her hips and normal strength in her extremities; and Dr. Rudolph found no major problems with her knee.  Finally, Dr. Sadiq opined that Ms. Taylor could work zero hours per day;  however, both Dr. Lorber and Dr. Steinberg opined that she was ready to go back to work.  This evidence supports the ALJ's decision that the above opinions are not consistent with the medical record as a whole and, as such, are not entitled to any special weight.

---

[1] Specifically, Ms. Taylor contends the ALJ did not properly evaluate Dr. Lorber's opinion with respect to the fact that Ms. Taylor could frequently reach outward or Dr. Sadiq's opinions that Ms. Taylor could frequently perform fine and gross manipulation, could work zero hours a day, and needed to elevate her legs.

### c.   Medications

Finally, Ms. Taylor claims that the ALJ erroneously evaluated the side effects of her medications.  In his opinion, the ALJ stated that Ms. Taylor's medication did not prevent her from participating in substantial gainful activity.  R. at 22.  Ms. Taylor argues her medication makes her drowsy and that a "claimant who is asleep is not performing 'sustained' work." Therefore, she is disabled.

However, Ms. Taylor's conclusion is not supported by her testimony.  During the administrative hearing, Ms. Taylor testified that her medication makes her "very drowsy and sleepy...."  R. at 44.  She never testified that the medication precludes her from working.  She also never testified that the medication causes her to fall asleep involuntarily.  She merely said it helps her sleep when she lies down.  This does not lead to any reasonable inference that her medication makes her disabled.  Therefore, the ALJ had substantial evidence to conclude that Ms. Taylor's medication does not prevent her from obtaining substantial gainful activity.

### 3.   Weighing of Medical Evidence

Ms. Taylor next argues that the ALJ failed to properly weigh the medical evidence on the record.  Specifically, she contends that the ALJ erred in rejecting the opinions of non-examining physicians, Dr. Nenaber and Dr. Sands.  Ms. Taylor argues that the ALJ did not provide legally sufficient grounds for rejecting the non-examining physicians' opinions and that they were not inconsistent with other medical evidence.  The Court disagrees.

The ALJ must consider the opinions of non-examining sources, but is not bound to them. 20 C.F.R. §404.1527(f)(2)(i).  Standards for evaluating non-examining sources are provided at 20 C.F.R. §404.1527(2)(1)(ii).  The relevant portion of the regulation states as follows:

> When an administrative law judge considers findings of a State agency medical or psychological consultant or other program physician, psychologist, or other

medical specialist, the administrative law judge will evaluate the findings using the relevant factors in paragraphs (a) through (e) of this section, such as the consultant's medical specialty and expertise in our rules, the supporting evidence in the case record, supporting explanations the medical or psychological consultant provides, and any other factors relevant to the weighing of the opinions. Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.

20 C.F.R. §404.1527(f)(2)(ii).

The ALJ properly considered the evidence provided by Dr. Nenaber and Dr. Sands. The ALJ evaluated the opinions of the non-examining physicians and considered them in his opinion. Because the ALJ gave significant weight, and not controlling weight, to the opinions of examining physicians, Drs. Sadiq, Lorber, and Manders, demonstrating that Ms. Taylor was capable of light work, he was required to explain the reason for the weight given to the opinions. *See* 20 C.F.R. § 404.1527(f)(2)(ii) ("Unless a treating source's opinion is given *controlling weight*, the administrative law judge must explain in the decision the weight given to the opinions of a [nonexamining physician].") (emphasis added). The ALJ did this by explaining that the non-examining physicians' evidence was inconsistent with the evidence as a whole. Specifically, the non-examining physicians were unable to evaluate the medical evidence gathered in the following year and were unable to hear Ms. Taylor's testimony.[2] R. at 23-24. Therefore, the ALJ met his burden when he rejected the opinions of Drs. Nenaber and Sands.

---

[2] Dr. Nenaber wrote his opinion in January 2008. Ms. Taylor continued to be examined until September 2009.

### 4.      Ms. Taylor's Credibility

Lastly, Ms. Taylor contends that the ALJ erred in finding her testimony not credible.  The court defers to an ALJ's credibility determination and shall overturn it only if it is "patently wrong."  *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008); *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006); *Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006).  This means that the ALJ's opinion will be reversed "only if [he] grounds his credibility finding in an observation or argument that is unreasonable or unsupported."  *Prochaska*, 454 F.3d at 738 (quoting *Sims*, 442 F.3d at 538).

The ALJ reasonably and logically evaluated Ms. Taylor's credibility.  The ALJ noted Ms. Taylor's testimony was inconsistent with the medical evidence provided by the examining physicians.  R. at 22.  He then compared her testimony to the medical evidence available.  R. at 22.  For example, the ALJ noted that Ms. Taylor complained of debilitating back pain, but there was no evidence of serious spine or back problems.  R. at 22.  Ms. Taylor complained of neck pain, but the evidence described her neck as supple.  R. at 22.  This shows that the ALJ's observation was supported and reasonable, and thus not "patently wrong."  Therefore, the ALJ did not err in finding Ms. Taylor's testimony not credible.

### IV.    <u>CONCLUSION</u>

For the reasons set forth above, the final decision of the Commissioner of the Social Security Administration is **AFFIRMED**.  Final judgment shall be entered accordingly.

SO ORDERED.      03/23/2012

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

22

DISTRIBUTION:

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

Norman Lamont Reed
reedsmithlaw@aol.com

Eric E. Schnaufer
eric@schnaufer.com